## MARY McINTOSH v. C. F. MOORE.

### Decided October 25, 1899.

#### 1. Wills—Evidence of Testator's Mental Capacity.

Upon an issue as to testator's mental capacity to revoke his will, his declarations as to transactions concerning the will and his disposition of the property are not too remote in point of time, where made during the period in which he must have destroyed the missing will, if he did destroy it, and where his alleged incapacity was such as may be brought about by old age.

#### 2. Same—Privileged Communication—Attorney and Client.

In a contest over the probate of a missing will an attorney should not be permitted to testify, over the client's objection, that the contestant, who was the testator's wife, while consulting with him, during the testator's lifetime, in reference to a suit for divorce, asked the attorney what would be the effect of a destruction of the will, as such matter was privileged.

#### 3. Same—Lost Will—Burden of Proof—Intention.

In a proceeding to probate a missing will the proponent has the burden, if the evidence shows that the testator destroyed it, of proving that it was not so destroyed with intention to revoke it.

#### 4. Same—Same—Charge—Presumption.

Where the evidence shows that a will, when last seen, was in the testator's possession, and that it could not be found after his death, the presumption arises that it was destroyed by him, and the court should so charge where there is no evidence to show that anyone else destroyed it.

#### 5. Same—Undue Influence.

See the opinion for evidence held not to warrant a charge upon the issue of undue influence exercised to induce a testator to destroy a will he had executed, with full discussion of the character of the undue influence that will vitiate.

#### 6. Same—No Presumptions from Old Age and Physical Debility.

There is no presumption against a will because of the physical debility or old age of the testator, the test being the integrity of the mind and not of the body.

APPEAL from Brazos. Tried below before Hon. W. G. TALIAFERRO.

*Ford & Ford,* for appellant.

*A. C. Brietz, A. G. Board, Doremus & Butler,* and *Hudson & Nall,* for appellee.

NEILL, ASSOCIATE JUSTICE.—This is a proceeding which was instituted in the County Court by the appellee to probate the will and codicils attached thereto, of David McIntosh, deceased. It was alleged in the application that the will could not be produced by the applicant.

The application was contested by Mary McIntosh, the surviving wife of the alleged testator.

A judgment was entered in the County Court admitting the will to probate, from which an appeal was prosecuted by the contestant to the District Court, where a like judgment was entered, from which we have this appeal.

It seems to be admitted by the parties that the alleged will and codicil were duly executed in conformity with the statute. The other issues in

the case made by the pleadings are: Was the will destroyed by the testator, or in his presence at his instance? If so destroyed, was the testator of sound mind at the time of its destruction? If destroyed by him, though he may have been of sound mind at the time, was he unduly influenced to destroy it?

The will and codicils were executed prior to the marriage of Mr. McIntosh to the contestant, and the undisputed evidence shows that it was in existence subsequent to the marriage. The testator was 80 years old when he married appellant, and had never been married before.

The will in question was executed about the 8th day of June, 1896; the first codicil about the 5th of February, 1897, and the second codicil on the 11th day of April, 1897. By the first codicil there was devised appellant, then Miss Mary Campbell, a certain lot in the city of Bryan, with all the improvements thereon, and by the second codicil, in addition to the former bequest, he willed her a lot on which was situated a storehouse in said city.

By the alleged will the principal part of deceased's estate was bequeathed to Frank M. Myers and Belle Everhart, his nephew and niece, and to Frances O. Chew, J. W. Chew, Jr., and Sarah W. Chew, the children of deceased's niece, Mary Chew, who are next of kin and heirs at law of the alleged testator. The appellee, C. F. Moore, was appointed executor of the alleged will.

On the 8th of May, 1897, Mr. McIntosh, by deed of that date, conveyed to his wife the two pieces of property which he had before bequeathed her by the codicil, and in addition the lot on which he lived.

After the death of the testator, though diligent search was made, the will could not be found, and the appellant testified upon the trial that it was not in her custody, and that she had not seen it for some time prior to her husband's death. The evidence shows that it was in his custody, and he had access to it during all the time it was shown to have been in existence. There is no direct proof of the destruction of the will by the testator, or by anyone else, but facts were testified to from which it might be inferred that the instrument was burned by him.

Upon the trial a witness testified that some time after the marriage of David McIntosh to appellant, that he, McIntosh, in speaking to the witness about his marriage, stated that he, McIntosh, was an old fool; and when asked by the witness how he came to marry, replied that he did not know anything about it, and that they hypnotized him; and when asked by the witness, "Who?" McIntosh replied, "Ah, that is the question." Another witness testified that McIntosh, after his marriage, told him that he had no recollection of ever signing any deed to his wife, and that then he thought awhile, and said, "Yes, I remember having signed something, but I have no recollection of what I was signing, or what I was doing, and I have no recollection of marrying." And that in the same conversation McIntosh said that he had been robbed and hypnotized. Mr. A. C. Breitz, an attorney at law, testified that when McIntosh came to consult him about bringing the suit to set aside the deed to land, made

by him to his wife, that he, McIntosh, said, "That infernal Campbell woman is about to rob me of everything I have got. Look here, I have just picked up this deed at the house. I found it there, and it conveys my old home to Mrs. McIntosh, and I never made such a deed as that. I never meant to convey my old home to her. I want her to have what the will calls for, but I want her to deed me my old home back. I have spent $700 or $800 on that place, and though it is my property, here I find the deed conveying the property to her."

All this testimony was admitted over the objections of appellant's counsel that it was hearsay, irrelevant, and immaterial on any issue in the case, and calculated to prejudice the minds of the jury against contestant.

The rule is well established that the declarations of a testator are admissible to prove the condition of his mind at the time the will was made. In this case the condition of the alleged testator's mind during the period of time that his supposed will must be presumed to have been destroyed, from its nonproduction after diligent search subsequent to his death, is the subject of inquiry, and his acts and declarations made during and just prior to that period are admissible, not as evidence of the truth of the facts stated by him, but as external manifestations of his mental condition. Such declarations ought to have some direct connection with and tend to show the condition of the mind at the time the supposed will was destroyed. But the period of time over which such declarations may extend depends much on the character of the unsoundness of the mind alleged to be proved. Schouler on Wills, sec. 193; 11 Am. and Eng. Enc. of Law, 1 ed., p. 156; Kennedy v. Upshaw, 64 Texas, 417. The character of unsoundness of the alleged testator's mind, sought to be established in this case, was such as may be brought about from the infirmities consequent to old age, and in view of this, we do not think that the acts and declarations of Mr. McIntosh, testified to, were too remote from the time the will must have been destroyed by him, not to be admitted as evidence of his mental condition at that time.

David McIntosh, a short time after executing the deed conveying the two lots bequeathed his wife, as well as the one on which he lived, became dissatisfied and retained counsel to institute suit against appellant for a divorce, and to cancel the deed upon the ground of fraud. Upon learning this, Mrs. McIntosh employed W. H. Nall, an attorney at law, as her counsel to advise her in reference to the threatened litigation, and to represent her in the event the suits should be commenced. From that time on until some time in July, when Mr. McIntosh finally abandoned his intention to bring the suits, Mr. Nall was appellant's counsel in the matters involved in the threatened litigation, but was not her attorney in any other matter. During this time she freely consulted him, and he advised her in relation to the matters involved in the prospective litigation.

Mr. Nall, as a witness for appellee, was permitted to testify, over the objection of appellant that the communication was privileged, that on

one occasion while Mrs. McIntosh was in his office to consult him about the contemplated suits in which he had been employed by her several months before, she asked him what would be the legal effect of the destruction of the will of David McIntosh; and that he informed her that, "If it was destroyed by the testator when in his right mind, it would amount in law to a revocation, otherwise not; that if anyone else destroyed it, it would not affect the will unless it was so destroyed in his presence and by his direction;" that on this occasion she seemed to be very nervous and excited, and before she asked the question, she got up, went to each window in the office, and looked out, as if looking for some one. The action of the court in overruling appellant's objection and admitting this testimony is assigned as error.

The necessities of a client compel him to repose unlimited confidence in his counsel. If threatened with a lawsuit involving either his property or domestic relations, he is bound to disclose all the facts and circumstances that may possibly affect the litigation, however sacred they may be. As necessities of litigation compel confidence on the one side, the policy of the law requires fidelity on the other. This policy which enjoins good faith on the part of the lawyer shields the client forever from its violation.

Justice can not be administered without the aid of men skilled in jurisprudence, in the practice of courts, and in those matters affecting rights and obligations which form the subject of judicial proceedings. If such professional communications were not protected, no man would dare consult a professional adviser with a view to his defense, or to the enforcement of his rights; and no man could safely come into a court, either to obtain redress or to defend himself. Greenl. Ev., sec. 238.

"The protection given by the law to such communications does not cease with the termination of the suit, or other litigation or business, in which they were made; nor is it affected by the party's ceasing to employ the attorney and retaining another; nor any other change or relation between them; nor by the death of the client. The seal of the law, once fixed upon them, *remains forever*, unless removed by the party himself, in whose favor it was there placed." Id., sec. 243.

"No legal adviser is permitted, whether during or after the termination of his employment as such, unless with his client's consent, to disclose any communication, oral or documentary, made to him as such legal adviser, by or on behalf of his client, during, in the course, and for the purpose of his employment, whether in reference to any matter as to which a dispute has arisen or otherwise, or to disclose any advice given by him to his client during, in the course of, and for the purpose of such employment. It is immaterial whether the client is or is not a party to the action in which the question is put to his legal adviser. And the presumption is that all communications between attorney and client are confidential." Bradner on Ev., 49, sec. 6; Durstein v. Schubkagel, 6 Law. Rep. Ann., 481, and cases cited in notes; Taylor on Ev., sec. 914.

The contention of appellee that the communication was not privileged

because the witness had not been retained as an attorney by appellant in regard to the will, can not be maintained. His professional advice was asked and given in regard to the effect of the destruction of the instrument, when the relation of client and attorney existed between them. If communications made by a client to his attorney can be divulged by him for the reason that such communications are not pertinent to the matters about which he has been employed, then any client would undergo the peril of having communications made to his attorney disclosed, for few men can determine whether a communication made to an attorney is germane to the matter about which his professional services are by his employment required. This is to be determined by the attorney when the communication is made for his consideration, and whether it is pertinent to the matter in hand or not, the law places the seal of silence upon his lips in regard to it. But was the inquiry of Mrs. McIntosh and the advice of the attorney disconnected with and have no bearing on the business about which he was employed by her? As is seen, he was retained to defend suits contemplated by appellant's husband for divorce and concellation of a deed which conveyed her certain property which was by the will bequeathed to her. The final result of a suit can not always be foreseen, and it was natural for Mrs. McIntosh to desire to know, in the event of a divorce and cancellation of her deed by a decree of the court, what would be the effect of the destruction of the will. Well might she have apprehended, as she says, that if the divorce should be granted, the deed canceled, and the will destroyed, she would get nothing by her marriage except her husband's name. It can not be said that advice of counsel was sought upon this question for an unlawful purpose, as is urged by counsel for appellee in their brief. There is nothing in the question that indicated it was asked for an illegal purpose, or with any object save obtaining such information as a woman, situated as she was, was entitled to have from her attorney.

But the proposition of appellee in his brief, "that professional communications, when made for an unlawful purpose, having for their object the commission of wrong, are not privileged," indicates the soundness of the principle of law which forbids an attorney to divulge the communications between him and his clients. Here, advice was sought and obtained by a client from an attorney which the one had the right to procure, and it was the duty of the other to give, and the attorney is permitted not only to testify to the communication, but to the actions and manner of his client at the time, for the purpose of having it appear to the jury that the communication was made for an unlawful purpose with the object of wrongfully destroying her husband's will. It is but simple justice to Mrs. McIntosh for us to say that there is nothing in this entire record that tends in the least to show that she at any time sought or obtained any wrongful advantage of the information imparted to her by attorney. Appellant's objection to the testimony of Mr. Nall should have been sustained.

No will in writing, made in conformity with the statutes of this State,

shall be revoked except by a subsequent will, codicil, or declaration in writing, except with like formalities, or by the testator testifying, canceling, or obliterating the same, or causing it to be done in his presence. Rev. Stats., art. 5337.

If a will, shown when last seen to be in the possession of the alleged testator, or where he had free access to it, can not be found after his death, the presumption is that he destroyed it for the purpose of revocation, and the burden is upon the propounders to overthrow this presumption. Collyer v. Collyer, 10 N. Y., 481; Betts v. Jackson, 6 Wend., 173; Schultze v. Schultze, 35 N. Y., 653, 91 Am. Dec., 88, and authorities cited in Clark v. Turner, 38 Law. Rep. Ann., 434. This, however, is a presumption of fact, and may be overcome like other presumptions by evidence; but he who seeks to establish a lost or destroyed will assumes the burden of overcoming this presumption by actual proof. If it is not sufficient for him to show that persons interested to establish intestacy had an opportunity to destroy the will. He must go further and show by facts and circumstances that the will was actually fraudulently destroyed. Rice, Amer. Probate Law and Prac., 248. Where there is evidence to repel this presumption, we do not think that it would be permissible in this State for the trial judge to give such presumption of fact in his charge to the jury. But unless there is some evidence to rebut it, we believe it is the duty of the trial judge to inform the jury of its existence. As we have stated, when the alleged will sought to be probated was last seen, it was in the possession of the alleged testator, or where he had access to it, and after diligent search it could not be found after his death. While it would be to the interest of the appellant to establish the intestacy of her husband, yet there is not a particle of testimony disclosed by the record tending in the least to show that the alleged will was destroyed by her, or by anyone else, save her husband. The court, in the absence of any testimony to overcome the presumption that the instrument was destroyed by the alleged testator, should, in our opinion, have instructed them that the presumption is that it was destroyed by him, for when a will previously executed can not be found after the death of the testator, the presumption that it was revoked by destruction by the testator stands in the place of positive proof in the absence of evidence to rebut the presumption (Collyer v. Collyer, supra), and erred in charging the jury upon the issue of the destruction of the alleged will, that if they believed that it was not destroyed by David McIntosh, to find for the proponent.

Nor do we believe that there was any testimony adduced upon the trial which tends to show that David McIntosh was unduly influenced, either by the appellant of anyone else, to destroy or revoke the alleged will. When a will has been destroyed by the alleged testator, it is necessary, in order to avoid the presumption of its revocation arising from such fact, for the proponent to show either that the testator did not have testamentary capacity, or that he destroyed the instrument through undue influence. In other words, there must be shown the same lack of testamentary capacity or the exercise of undue influence that would be

sufficient to invalidate the will. In the case of Patterson v. Lamb, 21 Texas Civil Appeals, 512, this court fully considered the question of undue influence as affecting the execution of a will, and without further discussing the question, we make from the opinion in that case the following quotation:

"Undue influence is defined as that which compels the testator to do that which is against his will from fear, the desire of peace, or some feeling which he is unable to resist. We say that the influence must be undue in order to vitiate the instrument, because influence of one kind and another surround every rational being, and operate necessarily in determining his course of conduct under every relation of life. Schouler on Wills, sec. 227. Undue influence, legally speaking, must be such as in some measure destroys the free agency of the testator. It must be sufficient to prevent the exercise of that discretion which the law requires in relation to every testamentary disposition. It is not enough that the testator is persuaded by solicitation or argument from disposing of his property as he previously intended. He may yield to the persuasion of affection or attachment, and allow that sway to be exercised over his mind; and in neither of these cases would the law regard the influence as undue. To amount to this, it must be equivalent to moral coercion; it must constrain its subject to do what is against his will, but which from fear, the desire of peace, or some other feeling, he was unable to resist; and, when this is so, the act which is the result of that influence is vitiated. Gilbert v. Gilbert, 22 Ala., 529. In the absence of fraud, no matter what influence may be exercised on a testator, so long as it does not overpower his inclinations and judgment, and induce a disposition of his property contrary to his own wishes and desires, his will can not be invalidated for undue influence. Monroe v. Barclay, 17 Ohio St., 302. The right of a testator to dispose of his estate depends neither on the justice of his prejudices nor soundness of his memory. He may do what he will with his own; and if there be no defect in his testamentary capacity, and no undue influence or fraud, the law gives effect to the will, though its provisions are unreasonable and unjust. Clapp v. Fullerton, 34 N. Y., 190; Jackson v. Jackson, 39 N. Y., 157. To avoid a will on the ground of undue influence, it must appear that the influence was exercised upon the very act of making the will. The fact that the testator was under the general and even controlling influence of another person in the conduct of his affairs, will not suffice to invalidate the will, unless that influence was specially exerted upon the testamentary act. Small v. Small, 4 Greenl., 220, 16 Am. Dec., 253, and authorities cited in note. Judge Redfield, after reviewing the cases decided, says: 'It is obvious that the influence to avoid a will must be such as, first, to destroy the freedom of the testator's will, and thus render his act obviously more the offspring of the will of others than of his; second, that it must be an influence specially directed towards the object of procuring a will in favor of particular parties; third, if any degree of free agency or capacity remained in the testator, so that, when left to himself, he was

capable of making a valid will, then the influence which so controls him as to render his making a will of no effect must be such as was intended to mislead him to the extent of making a will essentially contrary to his duty, and it must have proved successful to some extent, certainly.' 1 Redf., Wills, 525. Undue influence can not be presumed or inferred from opportunity or interest, but must be proved to have been exercised, and exercised in relation to the will itself, and not merely in other transactions. Small v. Small, supra; Tyler v. Gardiner, supra."

In this case there is not a particle of evidence which tends to show that Mrs. McIntosh at any time either before or after her marriage ever said or did anything that would influence her husband to destroy or in any manner revoke his alleged will. It may have been to her interest for him to have destroyed it, but she never importuned or even requested him to do so. According to her testimony, which is the only testimony on this question, when her husband, with a paper in his hand which he called his will, asked her to take it and burn it, she refused to do it, telling him that if the will was destroyed he must do it himself. If at that particular time it was destroyed by his casting it into the fire (which the testimony tends to show) its destruction was, according to the evidence, his free and voluntary act, done in such a way and under such circumstances, accompanied by such declarations on his part as showed beyond question that by its destruction he intended its revocation. It certainly can not be argued, from the facts of the refusal of one to comply with the request of an alleged testator to destroy his will in his presence, and it was then burned by the testator himself, that he was unduly influenced in its destruction by the one whom he requested to destroy it. Nor is there any evidence tending to show that anyone else influenced Mr. McIntosh to destroy the alleged will. It is therefore our opinion that the court erred in instructing the jury that if they believed from the evidence that McIntosh destroyed the will because of undue influence brought to bear upon him by some other person or persons, to find for the proponent. Delgado v. Gonzales, 28 S. W. Rep., 459.

There being no evidence tending to rebut the presumption arising from the failure after diligent search to find the will after the death of the alleged testator, that he destroyed it animo revocandi, and none tending to show that he was induced by undue influence to destroy the alleged instrument, the only remaining question is, did the alleged testator at the time of its destruction have such mental capacity that it enabled him to revoke his will? Or in other words, did he, at the time, have such capacity as enabled him to make a valid will, i. e., testamentary capacity? The burden of proving that he did not have such testamentary capacity at the time the will was destroyed was upon the proponent, and it is not sufficient to show that a part of the time during the period between when the will was last seen and the time of his death, he did not possess such capacity; but it must reasonably appear from the evidence that at the time of its destruction he was lacking in testamentary capacity, for he may have been, during a part of the time that elapsed from the time

when the will was last seen and his death, incapable of revoking it, yet at the time of its destruction he may have possessed the necessary testamentary capacity.

There is no presumption against a will because made by a man advanced in age, nor is there any presumption that when an aged man destroys his will he did not, on account of his age, have capacity to revoke it. Incapacity can not be inferred from enfeebled condition of mind or body, for if incapacity could be inferred from such facts, a man by mere inference might be deprived of his legal right to dispose of his property as he sees fit. The law sustains testamentary dispositions made by persons of impaired mental and bodily powers, provided the will was the free act of the testator, and he has sufficient intelligence to comprehend the condition of his property, and the scope, meaning, and effect of the provisions of the will. Horn v. Pullman, 72 N. Y., 269; Delafield v. Parish, 25 N. Y., 9; Campbell v. Campbell, 6 Law. Rep. Ann., 166, and note.

Neither old age, sickness, nor extreme distress in mind or body incapacitates, provided the testator has possession of his mental capacities, and understands the business in which he is engaged. The test is integrity of the mind, not the body. Redf. on Wills, secs. 97, 102, 125; Taylor's Med. Jur., sec. 336; Ray's Med. Jur., sec. 336.

Without passing upon or intimating any opinion upon the question as to whether or not the alleged testator, at the time his will was destroyed, had sufficient testamentary capacity to revoke it, we will say that in our opinion the testimony was such as required its submission by the court to the jury for their determination.

For the reason of the errors indicated, the judgment of the District Court is reversed and the cause remanded.

*Reversed and remanded.*