## CRUZ v. PRADO.

### In re HERNANDEZ' ESTATE.

#### No. 12264.

Court of Civil Appeals of Texas.
San Antonio.

April 25, 1951.

Rehearing Denied May 16, 1951.

Edward W. Halbardier, San Antonio, for appellant.

Maverick, Putman & Putman, San Antonio, for appellee.

NORVELL, Justice.

On March 3, 1948, the County Court of Bexar County admitted to probate a will purporting to be that of Francisco Hernandez, who died on January 18, 1948. This will was executed on May 9, 1946, and named Adan Cruz independent executor and sole beneficiary of the estate, upon the recited "consideration that the said Adan Cruz shall support and maintain me, in sickness and in health the rest of my life."

Juan Prado, an adopted son, sought to have the order of probate set aside. He was unsuccessful in the County Court and appealed to the District Court, where it was stipulated that the only issue to be determined was whether or not Hernandez possessed testamentary capacity at the time the will was executed. After a hearing the court entered its order setting aside the order of the county court and denying probate of the will.

The trial judge's fourth finding of fact, which is the basis of the judgment, reads as follows: "4. The Court further finds that the preponderant evidence discloses that long prior to his death and prior to May 9, 1946 (the date of the will), Francisco Hernandez was feeble and given to talking to himself, and that he would constantly pray aloud, and that his actions and conduct generally were that of an infirm, illiterate and feeble-minded old man, and that at the time he affixed his mark to the purported will, he did not possess the ability to know and appreciate the extent and value of his property nor the business he was then attempting to transact, nor the natural objects of his bounty."

Appellant asserts that the judgment should be reversed for the reason that the

evidence is insufficient to support the finding above set out. It is also urged that such finding is against the overwhelming preponderance of the evidence.

It appears that Juan Prado was adopted by Francisco Hernandez in 1930, when he was nine years of age. In 1940 Prado ceased to live with Hernandez, and married in 1941. The wife of Francisco Hernandez died in October of 1944. Some few months thereafter he left his home and went to live with a sister-in-law. The length of this stay is a matter of some dispute, but the maximum period supported by any testimony seems to be from February to June of the year 1945. Thereafter, Hernandez returned to his home, located near the San Jose Mission south of San Antonio, and lived there with Adan Cruz until his death.

With the exception of the testimony of Juan Prado, all of the evidence having a tendency to establish that Hernandez was of unsound mind came from those who had not seen him since June of 1945, which was almost a year before the date of the execution of the will and about two and a half years prior to his death. These witnesses were collateral relatives by blood or affinity. Their testimony is almost as brief as the trial court's finding based thereon. They testified that Hernandez was old and feeble, almost blind and hard of hearing; that on one or two occasions he lost control of his bowels; that he would talk to himself and pray out loud, and sometimes, as one witness expressed it, he would "pray and cuss at the same time." One witness said that he, meaning Hernandez, "did not talk like the rest of us."

Juan Prado testified that he visited Hernandez every two or three Sundays after he had returned to his home near the Mission. He was asked the following question and made the following reply:

"Q. Just tell us in your own words, just what did you see him do that was strange or unusual? A. Well, when I used to go see him he was, you know, his hand, he tried to shake hands with me and he couldn't see me, I had to grab his hand; and he used to be talking about something and then he would come out with something else. That was all."

Prado also stated that before the death of his wife Hernandez' memory "wasn't very bad" but "after she died he couldn't see, and he used to talk and he didn't know what he was talking about." On cross-examination it was developed that Prado could not remember any particular conversation where Hernandez would abruptly change the conversation and that he did not know or did not remember as to "what Hernandez' mental faculties were on May 9, 1946."

Prado's testimony is insufficient in itself to sustain a finding of lack of testamentary capacity, and it is aided but little by that of persons who saw Hernandez for the last time in June of 1945.

■ This litigation did not grow out of an attempt to contest a will when it was presented for probate, but here appellee sought to set aside a will already probated. The burden of proving testamentary incapacity therefore rested upon Prado. Chambers v. Winn, 137 Tex. 444, 154 S.W. 2d 454; Cook v. Denike, Tex.Civ.App., 216 S.W. 437; Barton v. Bailey, Tex.Civ. App., 202 S.W.2d 277; 59 Am.Jur. 98, Wills, § 90.

■ The right to dispose of property by will is not to be denied upon evidence amounting to little more than suspicion or surmise. Despite Hernandez' age and physical infirmities, his testamentary desires are not to be disregarded because he prayed out loud, or cussed at times, or would not "talk like the rest of us," or because upon occasion he would abruptly change the subject during the course of a conversation. We hold that the evidence is insufficient to support the judgment.

When we consider all of the evidence, it is apparent that the finding is likewise contrary to the overwhelming preponderance of the evidence. The lawyer who prepared the will testified that he discussed the matter with Francisco Hernandez in the Spanish language. One of the witnesses to the will also testified that she discussed the will with Hernandez in the Spanish language. It was stipulated that another witness to the will, if present, would testify "to all the facts as set out and incorporated in the proof of the will."

A Catholic priest testified that Hernandez lived right across the way from his residence and that he brought the last sacraments to the testator shortly before his death. The priest considered that Hernandez was mentally sound at that time.

A homeopathic licensed physician testified that he had been acquainted with Hernandez from 1945 until his death in 1948; that he examined his eyes and saw him numerous times, that he observed nothing that would cause him to feel that Hernandez was not of sound mind. The doctor stated that Hernandez seemed to be a man of fair intelligence, although he wasn't an educated man.

Under the circumstances of this case, we do not believe it can be said that the will was an unnatural one. The purpose of the will, as stated therein, was to make provision for support of the testator until he died. Prado, the adopted son, did not live with his foster father, nor did he care for him. The inventory of the estate discloses an appraised value of $900 and there is nothing to indicate that Adan Cruz failed in any way to carry out his contractual obligation.

■ Some of the trial judge's findings seem to suggest "undue influence," but this is not an "undue influence" case, as the parties stipulated that the only issue to be determined was that of testamentary capacity.

"The law recognizes undue influence in the procurement of a will as a distinct ground for its avoidance. In its essential elements it has no real relation to the ground of mental incapacity. Testamentary incapacity implies the want of intelligent mental power, while undue influence bespeaks in itself the existence of a mind of strength sufficient to make a valid will if unhindered by the dominant influence, and such a mind as would have produced a valid will but for the coercion or restraint to which it was subjected." Scott v. Townsend, 106 Tex. 322, 166 S.W. 1138, 1143, reversing, Tex.Civ.App., 159 S.W. 342; Long v. Long, 133 Tex. 96, 125 S.W.2d 1034; 44 Tex.Jur. 564, Wills, § 22; 5 Tex. Law Review 332.

■ For the reason pointed out, the judgment appealed from is reversed and the cause remanded for another trial. McIntosh v. Moore, 22 Tex.Civ.App. 22, 53 S.W. 611, 615, wherein it was said that, "There is no presumption against a will, because made by a man advanced in age * * *. Incapacity cannot be inferred from enfeebled condition of mind or body; for, if incapacity could be inferred from such facts, a man by mere inference might be deprived of his legal right to dispose of his property as he sees fit." Green v. Dickson, Tex.Civ.App., 208 S.W.2d 119, 125, wherein it was held on authority of Milner v. Sims, Tex.Civ.App., 171 S.W. 784, that "the fact that testatrix was old and feeble, that her memory had become faulty and her mental faculties somewhat impaired, was not sufficient to warrant a court in setting aside her deed or will; (and) that the right of a grantor to dispose of her property according to her own wishes was just as sacred, and should be guarded with as much care, as any rights due to the living." Salinas v. Garcia, Tex.Civ.App., 135 S.W. 588; Jones v. Milam (Re: Bartel's Estate), Tex.Civ.App., 164 S.W. 859; Milner v. Sims, Tex.Civ.App., 171 S.W. 784; Whitney v. Murrie, Tex.Civ.App., 264 S.W. 270; McCannon v. McCannon, Tex.Civ.App., 2 S.W.2d 942; 57 Am.Jur. 85, Wills, §§ 70, 72; 68 C.J. 443, Wills, §§ 41, 42.

Reversed and remanded.

On Motion for Rehearing.

We call attention to two opinions of the Amarillo Court of Civil Appeals which were published while motion for rehearing was pending in this cause, namely, Bell v. Bell, 237 S.W.2d 688, and Jowers v. Smith, 237 S.W.2d 805. In our opinion, these authorities support our original disposition of this appeal.

Appellee's motion for rehearing is overruled.