**BAILEY et al. v. BAILEY et al.**

No. 5533.

Court of Civil Appeals of Texas. Amarillo.

March 29, 1943.

Rehearing Denied May 3, 1943.

Hart & Brown, of Austin, for appellants.

H. S. Lattimore, of Fort Worth, and Shelton & Shelton, of Austin, for appellees.

STOKES, Justice.

This is an action to probate a written will which was not produced and which the proponents alleged was lost or destroyed by some person other than the testator but not revoked by him.

On June 16, 1937, James R. Bailey executed his typewritten will. He died March 25, 1941, in Travis County.· After his death no will executed by him was found or produced. On May 21, 1941, Frank A. Bailey, Sr., a brother of decedent, filed in the County Court of Travis County an application to probate, as the will of decedent, an unsigned typed carbon copy of the will executed by decedent in 1937. He alleged that this typed copy of the will was found among decedent's papers in. decedent's lock box at an Austin bank but that the will itself could not be found.

J. R. Bailey was survived by. his wife, Mrs. Anna T. Bailey; his brothers, Frank A. and Jesse Bailey; his sister, Mrs. H. L. Dailey; his sister-in-law, Mrs. Benjamin P. Bailey, a widow, and her two children, Benjamin P. Bailey, Jr., and Mrs. Marcita Bartlett. Each of these persons was made a party to the application of Frank A. Bailey to probate the alleged lost will, as were also Lucille S. Hart and Ann Shirley Hart who, with Mrs. Anna T. Bailey and Frank A. Bailey, were named in the alleged lost will as independent executors of decedent's estate.

Mrs. Anna T. Bailey, the surviving wife, Lucille S. Hart, her daughter by a former marriage, Ann Shirley Hart, the daughter of Lucille S. Hart, Mrs. Benjamin P. Bailey and her two children filed answers denying the allegations of proponents that

the will executed by decedent in 1937 had not been revoked.

The application to probate the will was heard in the county court and denied, from which proponents duly appealed to the 98 District Court of Travis County. By that court the case was thereafter transferred to the 126 Judicial District Court of the same county, where the cause was tried with a jury and resulted in a finding by the jury that the deceased did not revoke the will made by him on June 16, 1937. Judgment probating the will was thereafter entered and the contestants' motion for new trial being overruled, they appealed to the Court of Civil Appeals of the Third Supreme Judicial District at Austin. Upon an order entered by the Supreme Court equalizing the dockets of the Courts of Civil Appeals, the case was transferred to this Court and is now before us for review.

Appellants, who were the contestants below, present a number of assignments of error, or points, in which they assail the judgment of the trial court, their principal contention being that there was no evidence legally sufficient to rebut the presumption that decedent revoked the will, which was not produced, and that the court erred in overruling their motions for an instructed verdict, for judgment non obstante veredicto, and for a new trial, and in admitting the will to probate.

The record shows that on June 16, 1937, J. R. Bailey employed E. Cartledge, an attorney of Austin, to prepare his will; that the attorney dictated the will to his secretary who prepared it, making an original and two carbon copies, the original being upon heavy white paper, one copy being on light-weight white paper, and the third being on Manila paper. After the original instrument was signed by the testator and two witnesses, the secretary inserted the two carbon copies in her typewriter and typed the names of the testator and the two witnesses in the places where they had been signed on the original document, folded the original will and the white carbon copy, and placed them in an envelope which was unsealed and had E. Cartledge's name and address printed thereon. She then handed them to Dr. Bailey, who left the office with them in his possession. Some three days prior thereto his wife, Mrs. Anna T. Bailey, and her daughter, Mrs. Lucille Hart, had departed for a summer vacation trip to California, and it was understood by all parties that

Dr. Bailey would join them within a few days. On the evening of the day the will was prepared, J. C. Winder, a close friend of Dr. Bailey, was consulting with him at his home concerning various matters of business and during the conversation Dr. Bailey handed to Winder an unsealed envelope containing some papers, telling Winder that Mr. Cartledge had that day prepared the papers contained in the envelope, and remarking, "I am getting old but I have work to do yet, but still I know I am at the age when anything could happen and somebody may want to know what to do with my property when I am gone and this will show them what to do with it." He thereupon requested Winder to take the envelope to R. E. Carrington at the Capital National Bank where he kept his account and to tell Mr. Carrington to put it in Dr. Bailey's lock box. The testimony shows that the next morning Winder complied with Dr. Bailey's request and delivered the envelope and papers which it contained to Carrington, telling him that Dr. Bailey desired that they be placed in his lock box. The lock box could not be opened except by the use of two keys at the same time, one of which was kept by the bank and the other by Dr. Bailey in his office at the University of Texas where he was employed as an instructor. Carrington testified that he had no recollection whatever of the transaction. Dr. Bailey left on the night of June 16, 1937, for California and did not return until September following, and as far as the testimony shows, no one saw the will at any time thereafter. Dr. Bailey died March 25, 1941, and in the afternoon following the morning of his burial two days later, his brother, Frank A. Bailey, in company with the president of the bank, entered the lock box and among other papers discovered the envelope handed to Dr. Bailey by Mr. Cartledge's secretary on June 16, 1937, when the will was prepared and executed upon which had been written in the handwriting of R. E. Carrington, the bank employe to whom Winder testified he delivered it, the words "Will, J. R. Bailey." The envelope contained the white carbon copy of the will, but the original document executed by Dr. Bailey was missing and a diligent search of all places where it would likely be found failed to reveal it.

No question is raised as to the due execution of the will nor as to its contents, since its execution was established by the testimony of Mr. Cartledge and Miss Ella

Everitt, his secretary, who prepared the will, and its contents were established by the carbon copy found in the envelope in Dr. Bailey's lock box and also by the Manila copy kept in the files in Mr. Cartledge's office. The controversy, therefore, is reduced to one of whether the court was authorized by the testimony to order the will probated in the face of the legal presumption arising from its loss.

The law is well established in this State, as well as in almost every jurisdiction in this country, that in a proceeding to probate a will, where it is shown that it was executed by the decedent and when last seen or accounted for, it was in his possession or in a place to which he had ready access but after his death it can not be found, the presumption arises that the testator destroyed it in his lifetime with the intention of revoking it. The presumption that it was revoked by the testator stands in the place of positive proof to that effect and he who seeks to establish the will assumes the burden of overcoming the presumption by producing facts and circumstances contrary thereto or that it was fraudulently destroyed by some other person. McIntosh v. Moore, 22 Tex.Civ.App. 22, 53 S.W. 611; Buchanan v. Rollings, Tex.Civ.App., 112 S.W. 785; Clover v. Clover, Tex.Civ.App., 224 S.W. 916; Aschenbeck v. Aschenbeck, Tex.Civ.App., 62 S.W.2d 326; Davis v. Roach, Tex.Civ.App., 138 S.W.2d 268; Collyer v. Collyer, 110 N.Y. 481, 18 N.E. 110, 6 Am.St.Rep. 405.

As far as the testimony reveals, the last time anyone actually saw Dr. Bailey's will was when the secretary of Mr. Cartledge handed it to him in Cartledge's office on June 16, 1937. It was accounted for, however, some two years later when Dr. Bailey visited his brother, Frank A. Bailey, at Fort Worth. On that occasion Dr. Bailey informed his sister-in-law, Mrs. Frank A. Bailey, of the existence of his will and told her it was in his lock box at the Austin bank. He also told her that her husband, Frank A. Bailey, was one of the executors and indicated to her that in the event anything should happen to him, he wanted his brother to procure the will and have it probated. This testimony was undisputed and it must be assumed that Dr. Bailey knew at that time that his will was securely preserved in his lock box at the Austin bank. While Carrington had no recollection of receiving the papers from Winder, the identical envelope delivered to Winder by Dr. Bailey and which Winder delivered to Carrington at the bank was found in Dr. Bailey's lock box after his death and it contained the carbon copy made by Mr. Cartledge's secretary simultaneously with the original instrument. On the envelope was written "Will, J. R. Bailey," which Carrington testified was in his handwriting. We think it is conclusive from the testimony that the will, as well as the envelope and the carbon copy, was delivered to Dr. Bailey by Carrington or someone else at the bank after Dr. Bailey returned from his summer vacation in California. Therefore, the case is controlled by the rule which we have above announced. Since the will was in the testator's possession the last time it was seen or accounted for, in order to overcome the presumption arising from its loss or disappearance, evidence of a clear and convincing nature must be produced. Baltzell v. Ates, 181 Ky. 413, 205 S.W. 548; Pritchard v. Harvey, 272 Ky. 58, 113 S.W.2d 865; Madden v. Sevier, 271 Ky. 688, 113 S.W.2d 41.

Appellees contend that the testimony was amply sufficient to support the judgment of the trial court and in support of that contention they cite us to the high points in the testimony, which are substantially:

a. That upon the occasion of Dr. Bailey's visit with the family of his brother, Frank A. Bailey, at Fort Worth in July 1939, he told Mrs. Frank A. Bailey about the will and expressed to her his desire that his brother procure it and have it probated in the event of Dr. Bailey's death.

b. That during the summer of 1939, Dr. Bailey visited his friend, E. R. Tinsley, at Lamesa, who operated an oil mill in which Dr. Bailey held some of the capital stock. On that occasion he had a conversation with Tinsley in which Tinsley asked him about a will and he replied that he had his business in order.

c. That the testimony plainly showed that Dr. Bailey maintained an abiding affection for his brothers and sister, beneficiaries under the will, until his death; that he endorsed notes for his brothers and contributed regularly to the support of his sister, Mrs. H. L. Dailey.

d. That on one occasion, in Dr. Bailey's office at the University, his sister, Mrs. Dailey, was visiting with him when his wife, Mrs. Anna T. Bailey, entered the office and

violently upbraided Mrs. Dailey, accusing her of trying to make trouble and coming between Mrs. Anna T. Bailey and her husband.

e. That about the eighteenth of March, 1941, Dr. Bailey had been informed by his physician, Dr. Brady, that he apparently had a serious physical condition and advised him to go to the Mayo Clinic at Rochester, Minnesota for a thorough examination in reference to a lump in his abdomen which Dr. Brady discovered and which he advised Dr. Bailey might be a cancer; that immediately Dr. Bailey made arrangements to go to the Mayo Clinic and wrote his brother at Fort Worth a letter stating that he would be through Fort Worth March 26, 1941, and that he desired to see his brother at the train to discuss an important matter with him. In the letter he requested his brother to come to the train alone and expressed the wish that Mrs. Frank A. Bailey not accompany her husband to the train, thus indicating that Dr. Bailey might have placed his will in his brief case, which he always carried with him on trips, for the purpose of discussing the will with his brother at Fort Worth, or possibly leaving it with him at that time; the inference being that if he did so, the will was removed from the brief case by other parties without the knowledge or consent of Dr. Bailey. Dr. Bailey was stricken and died only a few days after he wrote the letter to his brother and the contemplated trip was not made. The testimony showed that several days after Dr. Bailey's death his brief case was exhibited to Mrs. Bailey's attorneys and it was empty.

f. The fact that after Dr. Bailey's death the carbon copy of the will, encased in the unsealed envelope marked "Will, J. R. Bailey," was found in Dr. Bailey's lock box at the bank.

g. The fact that Dr. Bailey was a highly educated man and realized the wisdom of leaving a will. This, appellees contend, was indicated by his statement to Tinsley that he had his business in order.

h. That if Dr. Bailey intended to revoke the original will, no valid reason can be advanced why he would leave a carbon copy of it in a place where the will most logically would be found after his death.

i. That it may be that Dr. Bailey thought the carbon copy was as valid as the original, or that he kept one copy in one place and the original in another, and that the depository of the original document has not been discovered.

j. That it may be that something happened innocently to the original instrument while the papers were in the hands of R. E. Carrington.

k. The fact that the appellant, Mrs. Anna T. Bailey, did not testify in the case.

While each of the facts and circumstances outlined above, as well as some others of a similar nature, was established by the testimony, none of them reveals any fact or circumstance that could be considered evidence that Dr. Bailey did not voluntarily destroy his will animo revocandi. His statement to Tinsley that he had his business in order was nothing more than an evasion of the direct question that had been asked him by Tinsley and can not be said to prove that Dr. Bailey intended to convey the idea to Tinsley that he then had a will. If it could be construed as such, however, it would not add anything to appellees' contention, because the conversation took place in June, 1939, and Dr. Bailey's visit to his brother's family in Fort Worth occurred in July, 1939, at which time it is conclusive, from the instructions given by him to Mrs. Frank A. Bailey, that the will was then in existence. This happened almost two years prior to the death of the decedent and, in our opinion, can not be considered as a material circumstance in the case. The will was undoubtedly in existence at that time and Dr. Bailey's statements to Mrs. Frank A. Bailey show that he then intended it to be his last will and testament. Nor do we think that the continued affection for his brothers and sister maintained by Dr. Bailey throughout the remainder of his life is of any material significance. It certainly does not prove that Dr. Bailey did not destroy his will with the intention of revoking it. The incident which occurred in Dr. Bailey's office between Mrs. Dailey and Mrs. Anna T. Bailey can not be said to prove anything more than that at that particular time unpleasant relations existed between the two women who participated in the conversation. Appellees suggest that the invectives expressed by Mrs. Bailey to Dr. Bailey's sister, for whom he had an abiding affection, would tend indelibly to fix in Dr. Bailey's mind a determination to dispose of his property in such manner that his wife would receive a smaller portion than she would receive if he should die intestate. We can not

agree with appellees in this regard. As far as the record shows, no such determination was ever expressed by Dr. Bailey, nor is any circumstance revealed that would indicate in the slightest degree that the incident had any effect whatever upon him. The record fails to reveal that any strained relations or feelings existed at any time, either before or after the conversation, between Dr. Bailey and his wife.

The suggestion of appellees that it may reasonably be assumed that Dr. Bailey had placed his will in his brief case for the purpose of discussing the will with his brother at Fort Worth on the occasion of his contemplated trip to the Mayo Clinic is entirely unsupported by the testimony. In fact, the opposite conclusion would be more reasonable. Dr. J. J. Brady, his physician at Austin, examined Dr. Bailey on March 18, 1941, and the examination revealed a lump or abnormal condition in the abdomen. Dr. Brady so informed Dr. Bailey and Dr. Bailey immediately concluded to go to Rochester, Minnesota, to be examined at the Mayo Clinic there. He was making preparations for the trip, even to the extent that he had purchased his railroad ticket, when he was suddenly stricken on March 20, 1941. The record at the Capital National Bank showed that at intervals Dr. Bailey opened his lock box and the last time he had entered it, as shown by the record there, was January 2, 1941, nearly three months before he was informed of the physical condition that caused him to decide to make the trip to the Mayo Clinic. We do not think it is likely that he would have removed the will from his lock box and placed it in his brief case unless there had been some special reason therefor, and certainly we are not warranted in concluding that he did so in the absence of any testimony whatever to that effect.

Appellees indicate that, in their opinion, the strongest circumstance in the case indicating that Dr. Bailey did not destroy his will animo revocandi is the fact that the carbon copy was found in his lock box, encased in the envelope in which it was delivered to him at the office of Mr. Cartledge at the time he executed his will. The record at the bank showed that Dr. Bailey entered his lock box thirty-two times after he executed his will. While he kept a number of other papers in the lock box, it would be a violent presumption to assume that he did not know the envelope containing, at least, a copy of his will was in the lock box. It must be admitted that this is a peculiar circumstance but, in our opinion, it does not constitute any substantial evidence that Dr. Bailey did not intentionally destroy the original document, much less constitute the clear and convincing evidence that is required to overcome the presumption that he did destroy it.

Appellees place special stress upon the failure of the appellant, Anna T. Bailey, to testify in the case. They argue that she may have been in possession of information that would have accounted for the will or, at least, accounted for the fact that Dr. Bailey's brief case was empty when delivered to her attorneys after his death, the significance of this being that it was shown by the testimony that his brief case appeared usually to be packed with various papers and documents. They suggest that if Dr. Bailey took the will from his lock box and placed it in his brief case for the purpose of taking it with him on his trip to the Mayo clinic, it could have been withdrawn from the brief case by Mrs. Bailey, or someone else, and destroyed without Dr. Bailey's knowledge or consent. We find no merit in these contentions. No witness testified to any fact which would even suggest that Mrs. Bailey ever at any time had possession of the will. On the other hand, it was shown that she did not at any time have access to the lock box where Dr. Bailey kept it. Moreover, as we have already said, it does not appear to be even likely that Dr. Bailey withdrew the will from his lock box and placed it in his brief case, because the only reason he would probably have done so would have been that he might take it with him on his contemplated trip, and he had not entered his lock box for almost three months before he was informed that his physical condition was such that it would be advisable for him to be examined at the Mayo Clinic.

A summation of the testimony relied upon by appellees to overcome the presumption that Dr. Bailey intentionally destroyed his will with the purpose of revoking it brings us inevitably to the conclusion that it constituted nothing more than suggestions, possibilities, and surmises. We do not find any evidence whatever that the testator did not destroy, and did not intend to destroy, his will for the purpose of revoking it. As is shown by the authorities cited above and many others that could be cited, both in this State and in other jurisdictions, the presumption that he did so

stands in the place of positive proof and it can be overcome only by clear and convincing evidence. In the recent case of Bob's Candy & Pecan Co. v. McConnell, 167 S.W.2d 511, 514, our Supreme Court said: "An inference cannot be based on a mere possibility. It can be based only on a fact proved or on something known to be true. Wright v. Conway, 34 Wyo. 1, [241 P. 369] 242 P. 1107. It cannot be based on a mere surmise or conjecture. Inferences of fact cannot be drawn from uncertain premises. Texas & N. R. O. Co. v. Brannen et al., Tex.Com.App., 166 S.W.2d 112, decided November 25, 1942."

Appellees not having produced any substantial evidence that Dr. Bailey did not destroy his will animo revocandi, the court below was not warranted in admitting the will to probate. Appellants' motions for a directed verdict and for judgment non obstante veredicto should have been sustained. The judgment will therefore be reversed and, since the record indicates the case was fully developed, judgment will here be rendered denying the application of appellees to probate the will.