Joe **HASTEY, C. N. Harrison and Larry Morris, and the Fireplace Place, a Partnership, Appellants,**

v.

**Houston HUMPHRIES et ux., and American Home Assurance Company, Appellees.**

No. 8922.

Court of Civil Appeals of Texas, Amarillo.

Dec. 29, 1978.

Second Rehearing Denied Jan. 29, 1979.

Underwood, Wilson, Sutton, Berry, Stein & Johnson, R. A. Wilson, Amarillo, for appellants.

V. G. Kolius, Amarillo, Timothy E. Kelley, Dallas, Kolander & Hamilton, R. C. Hamilton, Amarillo, for appellees.

1. The original alignments, additions and eliminations of parties to the litigation are detailed and enumerated in *Harrison v. Humphries*, 567 S.W.2d 884 (Tex.Civ.App.—Amarillo 1978, no writ), where the overruling of the partners' and the partnership's pleas of privilege was sustained.

## ON MOTION FOR REHEARING

REYNOLDS, Justice.

Upon further consideration, we conclude that the judgment for plaintiffs must be reversed and the cause remanded because an unresolved essential element of plaintiffs' causes of action was omitted, over objection, from the jury's consideration. We, therefore, grant the defendant-subcontractors' motion for rehearing, withdraw our 13 November 1978 opinion, set aside our judgment, and substitute this opinion.

Houston Humphries and wife, Dorothy Humphries, leased an apartment in Tiffany Square, a Potter County apartment complex owned by Multivest Real Estate Fund, Ltd., Series VI, d/b/a Tiffany Square, and insured by American Home Assurance Company. The Fireplace Place, a partnership composed of Joe Hastey, C. N. Harrison and Larry Morris, was the subcontractor for the installation of the fireplace in the Humphries's apartment. A 25 October 1975 fire in the fireplace chimney chase damaged the apartment and destroyed personal property of the Humphries.

The Humphries instituted litigation. When this case was positioned for trial, the Humphries and American Home, which had intervened as subrogee and under the name of Multivest to the extent of the $16,030.03 it allegedly had paid Multivest under the policy, were plaintiffs, and the Fireplace Place partnership and the partners individually were defendants.[1] As material to the appeal, plaintiffs' causes of action for damages were founded on the alleged negligence of Fireplace (a designation to encompass all defendants) in constructing the fireplace chimney flue. Fireplace interposed only a general denial to the causes of action alleged.

As the evidence developed, it was shown that Fireplace had contracted to install the

fireplace and chimney in the Humphries's apartment. The written contract provided that it shall not be assigned or sublet without written consent, and there is no evidence of any written consent to an assignment or that a formal assignment was made. However, upon the questioning of Larry Morris by counsel for American Home, the following developed:

Q. Now, Mr. Morris, you were in charge of that job, weren't you?

A. My position at that time was to check with the installers ___

Q. Let's get it straight here.

A. No.

Q. Your were not in charge. Who was in charge?

A. The Fireplace Place was in charge of the job.

Q. Who in the Fireplace Place was in charge?

A. Mr. Hastey was over all field operations. I was, at that time, going to the jobs, seeing that the material had been delivered by private carrier.

   *     *     *     *     *     *

Q. Haven't you testified previously by deposition that you were in charge of the job?

A. The way you said it ___

Q. All I want to know is who in Fireplace Place was responsible for these being installed correctly now. That's all I want.

A. The installers.

   *     *     *     *     *     *

Q. Who was in charge of them being installed correctly?

A. The installer is paid to go install the unit, and they know ___

   *     *     *     *     *     *

Q. Were you in charge of seeing or had anything to do with seeing that it was installed correctly?

A. Can I say something before I ___

   *     *     *     *     *     *

Q. Well, were you responsible or not for it then?

A. I would assume, yes.

Q. All right. So Mr. Tingle [an installer] wasn't responsible, you were.

A. Yes.

Q. All right.

A. Now, there is more to that.

Q. Well, you'll have a chance. We're going to get your full story, don't worry about that.

A. Okay, that's fine.

   *     *     *     *     *     *

Q. Well, didn't the Fireplace Place really sub-contract out and just pay people to install a fixed rate for each fireplace they installed?

A. That is correct, yes, sir.

   *     *     *     *     *     *

Q. But he [the installer] was paid by the unit, though, and not by the hour ___

A. Yes, sir, he was paid ___

Q. ___ not by the day, but paid by the unit.

A. Yes, sir, that's correct.

   *     *     *     *     *     *

Q. I'll read from your deposition on page 19 starting at line 15. Question: "Now, with respect to the actual installation of Tiffany Square Apartment Complex, who was in charge of that? and your answer was, on page 18 (sic), "I would say I was." You remember saying that back there then, didn't you?

A. Yes, sir.

Q. Today you had a different version, you had some workman going to be in charge.

A. Now, you asked who was in charge of putting it in. There is quite a bit of difference.

Q. There is difference in putting it in. And the words there were "actual installation." That's the words used in your deposition. And you say there's a difference in putting it in and actual installation?

A. All right.

Later, counsel for Fireplace pursued the matter as follows:

Q. Now continue [reading from Morris's deposition].

A. "Did you actually travel to Amarillo and supervise the installation of these

fireplaces?" And the answer: "As far as direct and physical supervision, I would go by and make sure that our installers had the proper equipment and if they had any problems. I would intervene between the installer and the framer and the general superintendent."

Q. All right, sir. You answered on Mr. Hamilton's questions that the installer was paid by the unit.

A. That is correct.

Q. So far as the installer was concerned, who made the determinations as to when he should he (sic) work and how he should work; when his hours should start; when his hours should end? Who made those determinations, please?

\* \* \* \* \* \*

A. All right. They were paid by the unit to go and install fireplaces. As to the time, they were told that the job was ready for them to go to work and they went at their own pace and own schedule.

This variant testimony lead Fireplace to object to the court's charge for the failure to submit an issue inquiring whether an employer-employee relationship existed between Fireplace and the installers. In that connection, Fireplace submitted a requested instruction on the relation and definition of an employee. The trial court overruled the objection and refused the requested instruction, submitting three special issues to the jury.

In response to the issues submitted, the jury found: (1) in constructing the fireplace chimney flue, Fireplace was negligent in three particulars, two of which proximately caused the fire; (2) the damage to the apartment house was $15,775; and (3) the value of the Humphries's personal property lost in the fire was $8,000. Judgment was rendered decreeing that the Fireplace partners are jointly and severally liable to the Humphries for $8,000 and to American Home for $17,530.94, which is the jury's award plus $1,755.94 as six percent interest from the date of the fire to the date of judgment, with both recoveries bearing nine percent interest from the date of judgment until paid.

Fireplace urges a reversal of the judgment by nineteen points of error. The first two points are directed to the court's overruling the objection to the failure to submit the employer-employee issue and the refusal of the requested instruction.

■ Fireplace's general denial required the Humphries and American Home to prove every material fact of their causes of action against Fireplace for negligence. *Boswell v. Handley*, 397 S.W.2d 213, 216 (Tex.1965). One of the facts to be proved was that the negligent acts pleaded were those of Fireplace's employees—*i. e.*, that the installers were subject to Fireplace's right to control the details of the work. *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 589 (Tex.1964).

■ The fact that the installers performed the work contractually undertaken by Fireplace created the presumption that the installers were in the employment of Fireplace, *Ochoa v. Winerich Motor Sales Co.*, 127 Tex. 542, 94 S.W.2d 416, 418 (1936), and, absent evidence to the contrary, would have compelled the jury to reach that conclusion. *Farley, v. M M Cattle Company*, 529 S.W.2d 751, 756 (Tex.1975). However, the presumption, which is not evidence, is rebutted by and cannot stand in the face of contrary evidence, *Combined American Insurance Company v. Blanton*, 163 Tex. 225, 353 S.W.2d 847, 849 (1962), although the facts giving rise to the presumption remain as a part of the evidence. *Robertson Tank Lines, Inc. v. Van Cleave*, 468 S.W.2d 354, 359 (Tex.1971).

■ The testimony that the installers were paid by the unit and had discretion as to hours of labor is indicative, but not conclusive, of a freedom from Fireplace's control of the details of the installation, *Maryland Casualty Co. v. Kent*, 3 S.W.2d 414, 415–416 (Tex.Com.App.1928), and is evidence contrary to the presumption. Thus, there is conflicting evidence on the status of the installers, and the court erred in refusing to submit this unresolved essential element of the causes of action. *Air Conditioning, Inc. v. Harrison-Wilson-Pearson*, 151 Tex. 635, 253 S.W.2d 422, 425 (1952).

Notwithstanding, the Humphries and American Home argue that the court correctly refused to submit the issue because the installers were employees as a matter of law. The argument is predicated on the evidence that Fireplace contracted for the installation and Morris admitted Fireplace was in charge and responsible for the installation. While these are positive evidentiary matters which are inconsistent with Fireplace's present position, they are not conclusive because of the presence of some explanatory evidence bearing on the independent status of the installers. Even though it be conceded that the great weight of the developed evidence preponderates in favor of an employer-employee relationship between Fireplace and the installers, the court cannot refuse to submit the issue merely because the evidence of independent contractor relationship may be factually insufficient to support that finding. *Garza v. Alviar*, 395 S.W.2d 821, 824 (Tex.1965).

Accordingly, Fireplace's first two points are sustained. The other points are not discussed because they pertain to matters which should not arise in the same posture in the event of further proceedings.

The judgment of the trial court is reversed, and the cause is remanded.