## In the Matter of the ESTATE OF Grace GLOVER, Deceased.

### No. 07–87–0050–CV.

Court of Appeals of Texas, Amarillo.

Nov. 9, 1987.

Rehearing Denied Dec. 10, 1987.

Bird & Bird, Richard D. Bird, Childress, for appellant.

Wolfram Law Firm, Walter P. Wolfram, Amarillo, for appellee.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

BOYD, Justice.

Appellants W.I. Bennett, Bill G. Bennett, Mert Glover, Virginia Glover, Robina Patterson, Bernice Darkow, Lois Troxel, Gwendolyn Lindblatt, Margie Kane, Opal Agee, Mary Jones, Patricia Hudson, Janice Glover, Janie Glover Reeves, and Shirley Glover, as the intestate heirs of Grace Glover, deceased, bring this appeal from a judgment of the Potter County Court at Law admitting to probate a will of Grace Glover dated February 24, 1982, and known as the "Brown Will." In this will, appellee Texas Scottish Rite Hospital for Crippled Children was the beneficiary of Ms. Glover's largess. We affirm the judgment of the trial court.

Grace Glover died on August 19, 1985. Between February 24, 1982, and August 12, 1985, she executed by signature or mark at least three out of four written instruments that had been prepared for her to sign as her last will and testament. These instruments were given nicknames for easy identification during the trial. They are as follows:

1. A will dated February 24, 1982, known as the "Brown Will" after the attorney, Carroll Brown, who drew it. In this will all of the property was left to

appellee. All parties agree that this will was duly executed.

2. A will dated July 18, 1985, designated as the "McCoy Number One Will" after the attorney who drew it. In this will, also, all of Ms. Glover's property was left to appellee, but a different executor, Jim Hutchins, was named.

3. A will dated July 18, 1985, also drawn by David McCoy and known as the "McCoy Number Two Will." This will basically left all properties to appellee after a five-year delay. Jim Hutchins was also appointed independent executor in this will.

4. A will dated August 12, 1985, named as the "Hays Will" after the attorney, Clyde Hays, who drew it. In this will substantial properties were left to Jim Hutchins' son, Kelly, and to appellee. Jim Hutchins was also named as independent executor in this will.

This action originated by Jim Hutchins' filing of the "Hays Will" for probate.

Appellee contested the application for probate of the "Hays Will" and sought probate of the "Brown Will" and, alternatively, probate of the "McCoy Number One Will" and, as a second alternative, probate of "McCoy Number Two Will." Appellants contested the probate of any of the above wills. As might be expected, an extensive jury trial developed. To the questions relevant to this appeal propounded to it, the jury answered as follows:

Issue No. 1: The "Hays Will" dated August 12, 1985, was not signed by her as her last will and testament.

Issue No. 2 was conditioned upon an answer to issue one that the instrument was signed by decedent as her last will and testament. Hence, it was not answered.

Issue No. 3: The "Hays Will" was not attested and subscribed by the witnesses in the presence of Grace Glover.

Issue No. 4: Grace Glover did not intend the "Hays Will" to be her last will and testament.

Issue No. 5: The "Brown Will" cannot by any reasonable diligence be produced in court.

Issue No. 6: Grace Glover possessed testamentary capacity at the time of the execution of the "Brown Will."

Issue No. 7: The "Brown Will" was attested and subscribed by the witnesses in the presence of Grace Glover.

Issue No. 8: Grace Glover signed the "Brown Will" with the intent that it would be her last will and testament.

Issue No. 8A: The "Brown Will" was not revoked by Grace Glover prior to her death.

Issue No. 9: The "McCoy Number One Will" cannot be produced in court by any reasonable diligence.

Issue No. 10: Grace Glover did not possess testamentary capacity at the time of the execution of the "McCoy Number One Will."

Issue No. 11: The "McCoy Number One Will" was attested and subscribed by the witnesses in the presence of Grace Glover.

Issue No. 12: Grace Glover did not sign the "McCoy Number One Will" with the intent that it be her last will and testament.

Issue No. 13: There was no jury answer to the question as to whether the "McCoy Number One Will" was revoked by Grace Glover prior to her death.

Issue No. 14: The "Brown Will" was last seen in the possession of Grace Glover or accessible to her.

Issue No. 15: The "McCoy Number One Will" was not last seen in the possession of Grace Glover or accessible to her.

No issues as to the "McCoy Number Two Will" were submitted to the jury. In answer to other issues propounded to it, the jury also found that appellants had acted in good faith in filing their contest and appellee acted in good faith in offering for probate the "Brown Will" and the "McCoy Number One Will."

Both parties agree that the question in this case is whether the evidence is sufficient to support the jury finding, given effect by the trial court, that the "Brown Will" was not revoked by Grace Glover prior to her death. We think it is and affirm the judgment of the trial court.

Appellants, in their first three points, contend that the trial court erred in failing to disregard the jury's finding that the "Brown Will" was not revoked because (1) there was no evidence to support the jury finding, (2) there was insufficient evidence to support that finding, and (3) that finding is so against the overwhelming preponderance of the evidence as to be manifestly unjust. Appellants also contend in their fourth point that the trial court erred in admitting the "Brown Will" to probate because there was no clear and convincing evidence overcoming the presumption that the will had been revoked. In their fifth point they say the "Brown Will" should not have been probated because "the evidence was uncontroverted that when said will was last seen or accounted for, it was in the actual possession of Grace Glover" and could not be found after her death.

Initially, we note that the jury findings that the "Brown Will" was last seen in the possession of, or accessible to Grace Glover, and that that will could not by the exercise of reasonable diligence be produced in court, are not attacked by either side in this appeal. Moreover, both sides agree that where the will of a testator was last seen in the possession of a testator or in a place where the testator had ready access to it, then the failure to produce such a will after the testator's death raises a presumption that the testator has destroyed the will with the intention to revoke it and that, under such circumstances, the proponent of the will has the burden of proof to overcome or negative such presumption by competent evidence. *Cable v. Estate of Cable*, 480 S.W.2d 820, 821 (Tex.Civ.App.—Fort Worth 1972, no writ).

Both sides, however, differ as to the standard by which the sufficiency of the rebutting evidence should be measured. Appellee says that the correct standard is the usual civil preponderance of the evidence standard. Appellants, however, citing the statement from this Court in *Bailey v. Bailey*, 171 S.W.2d 162, 168 (Tex.Civ. App.—Amarillo 1943, no writ), that the presumption may be "overcome only by clear and convincing evidence," say that such proof must meet that evidentiary standard.

The statement of the *Bailey* Court has been cited with approval in such cases as *Pipkin v. Dezendorf*, 618 S.W.2d 924, 925 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.); *Berry v. Griffin*, 531 S.W.2d 394, 397 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.); and *Dodd v. Peoples National Bank*, 377 S.W. 2d 760, 762 (Tex.Civ.App.—Texarkana 1964, no writ).

The difference is material, for a clear and convincing standard is an intermediate one falling between the preponderance standard of ordinary civil proceedings and the beyond a reasonable doubt standard of criminal proceedings, and is defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *See State v. Addington*, 588 S.W.2d 569, 570 (Tex.1979). Application of that standard would also require application of a more onerous intermediate appellate standard of review. That standard has been articulated as requiring the appellate court not to determine whether the trier of fact could reasonably conclude that the existence of a fact is more probable than not, as in ordinary cases, but whether the trier of fact could reasonably conclude that the existence of the fact is highly probable. *See Neiswander v. Bailey*, 645 S.W.2d 835, 836 (Tex.App.—Dallas 1982, no writ).

As related to this type of proceeding, however, we believe the Court's decision in *State v. Turner*, 556 S.W.2d 563 (Tex.1977), *cert. denied*, 435 U.S. 929, 98 S.Ct. 1499, 55 L.Ed.2d 525 (1978), is fatal to appellants' contention. In that decision, the Court had occasion to consider similar language to that used by the *Bailey* Court by other courts. In that case, the Court pointed out that the general rule in civil cases was that the party having the burden of proof must establish the case by a preponderance of the evidence. In a thorough discussion of the types of cases in which such language was used and the historical origin of that type of phrasing, the Court cited with approval its prior statement in *Sanders v. Harder*, 148 Tex. 593, 227 S.W.

2d 206 (1950), in which it characterized that language as "but an admonition to the judge to exercise great caution in weighing the evidence." *Id.* at 565. The Court concluded that, while some courts in other jurisdictions make a distinction between the standard of clear and convincing evidence and the usual civil standard of the preponderance of the evidence, as a general rule, Texas Courts review evidence by but two standards; those being factual sufficiency and legal sufficiency. The Court continued with the admonition that in the ordinary civil case, the requirement of clear and convincing evidence is "merely another method of requiring that a cause of action be supported by factually sufficient evidence." *Id.*

Thus, the teaching of this case is that absent other specific requirement, either statutorily or by case decision, a proponent's burden is to establish its cause by a preponderance of the evidence. The sufficiency of the evidence produced would be measured by the traditional tests set out in such cases as *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951) and *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965).

The more onerous requirement of clear and convincing evidence has been mandated by statute and by case law in such instances as commitments under the Mental Health Code. Tex.Rev.Civ.Stat.Ann. art. 5547–51 (Vernon Supp.1987). *See also State v. Addington*, 588 S.W.2d at 570. It has also been required in cases involving the involuntary termination of a parent-child relationship. *See In Interest of G.M.*, 596 S.W.2d 846 (Tex.1980). However, the requirement was made in those cases because of the necessity for protection of such fundamentals as a right to liberty and the right to enjoy a natural family unit. The instant case is one more in the mainstream of ordinary civil proceedings and, thus, is subject to the general rule explicated in *State v. Turner*, 556 S.W.2d at 565.

Appellants' "no evidence" or legal insufficiency attack requires us to consider only the evidence and the inferences tending to support the finding and disregard all evidence and inferences to the contrary.

*Garza v. Alviar*, 395 S.W.2d at 823. Their factual insufficiency attack requires us to examine the whole record to determine if the evidence supporting the finding is so weak, or the evidence to the contrary is so overwhelming, that the finding is clearly wrong and unjust. *Id.*; *In re King's Estate*, 244 S.W.2d at 661 (1951).

■ A presumption such as that in this case is a presumption of fact and, absent evidence to the contrary, would have compelled the jury to reach the conclusion that the will had been destroyed by Ms. Glover. *See Empire Gas & Fuel Co. v. Muegge*, 135 Tex. 520, 143 S.W.2d 763, 767–68 (1940); *McIntosh v. Moore*, 22 Tex.Civ.App. 22, 53 S.W. 611, 613–14 (1899, no writ). However, a presumption of this type is rebutted by and cannot stand in the face of contrary evidence although the facts giving rise to the presumption remain as a part of the evidence. *See First National Bank of Mission v. Thomas*, 402 S.W.2d 890, 893 (Tex.1965); *Combined American Insurance Company v. Blanton*, 163 Tex. 225, 353 S.W.2d 847, 849 (1962); *Empire Gas & Fuel Co. v. Muegge*, 143 S.W.2d at 767; *Hastey v. Humphries*, 576 S.W.2d 159, 162 (Tex.Civ.App.—Amarillo 1978, writ ref'd n.r.e.); 1 R. Ray, Texas Law of Evidence Civil and Criminal § 53 (Texas Practice Supp. 3rd ed. 1986).

■ As we noted above, this cause originated when Jim Hutchins filed for probate the "Hays Will." Reiterated, the question presented by this appeal is whether the evidence is sufficient to justify the jury's finding that Ms. Glover did not revoke the "Brown Will." Appellants do not challenge the jury findings that Grace Glover possessed testamentary capacity at the time of her execution of the "Brown Will," that it was attested and subscribed by the witnesses in the presence of Grace Glover, and that she intended that instrument to be her last will and testament. Appellants do not challenge the jury findings that the instrument in question was last seen in the possession of, or accessible to Ms. Glover, and that it cannot by any reasonable diligence be produced in court. For the purpose of

our discussion, then, we may consider these facts as established.

The evidence in this case shows that by instrument dated March 21, 1977, Ms. Glover executed a will drawn by attorney Deane Watson, in which she left all of her property to appellee. On May 20, 1980, she wrote a personal letter to appellee. In that letter she commented that she had joined the Eastern Star, based upon her brother's Masonic membership, and had received a fifty year membership certificate in that Order. In that letter she noted that at that time she was eighty-three years of age, and that "all of my brothers and sisters and parents have gone so I would like for your hospital to have, to be used for the care of those helpless children what property I have at my going." She also said that she had made a will effectuating this desire.

On March 5, 1981, she contacted attorney Carroll Brown, which resulted in her execution of the will admitted to probate here. In this will, appellee was also her beneficiary, but a different executor was named. During the ensuing years she continued to have contact with and used Mr. Brown as her legal advisor on various items of business. He also estimated he would visit Ms. Glover "once or twice a month." As a part of his legal representation he worked out a prepaid burial arrangement with the Blackburn–Shaw Funeral Home in Amarillo. He last saw Ms. Glover, in the presence of Jim Hutchins, on August 5, 1985, at which time she made no mention of any change in her will. In Brown's opinion, as late as January 1, 1985, Ms. Glover still possessed testamentary capacity, but her mental condition was deteriorating and by the first part of July, he felt she no longer possessed that capacity.

When Mr. Brown found out that Ms. Glover had died, he contacted the funeral home and found that Mr. Hutchins had made arrangements at the funeral home and that Hutchins had a power of attorney and a will that named him as executor. This surprised Mr. Brown and he made various efforts to contact Mr. Hutchins. When he finally was able to do so, he was told that Hutchins had a power of attorney which Hutchins refused to show him. Hutchins also told Brown that the will left him as the executor, left the property and the farms to his son, and left some property to the Children's Home at the end of a trust arrangement, under which he was the Trustee.

Mr. Brown checked the courthouse and found that an application had been filed to probate the "Hays Will" at a time "which was, oh, an hour, possibly before the funeral." The record revealed that the application to probate the will was filed at 2:28 p.m. on the day of Ms. Glover's funeral, which was held at 3:00 p.m. His suspicions were aroused, so he then contacted appellee. Brown also testified that Ms. Glover had been a legal secretary, had been a "pretty smart business woman," and he testified that when the "Brown Will" was executed, she had destroyed the "Watson Will" in his presence.

Mr. Hutchins testified that he had known Ms. Glover for some twenty to thirty years, that she was a "friend of the family," and that he and his son had worked some of her land. He stated that he had been taking care of her business by virtue of a power of attorney dated July 18, 1985. He also admitted that he had not farmed any of Ms. Glover's land since 1978 and that some "six months, five months" prior to the time he "started coming back and tending to this lady," she had sued him, asserting that a charge for terracing had been overcharged, and he had paid her some money back. The testimony also revealed that the "McCoy Will" as well as the "Hays Will" were actually procured by Hutchins, assertedly upon instructions from Ms. Glover, and were prepared by attorneys selected by him who had not previously represented Ms. Glover. Neither of those attorneys had actual personal contact with her. The jury found, and the evidentiary basis of that finding is not challenged, that Ms. Glover did not have testamentary capacity at the time of the execution of these wills.

Mr. Hutchins also testified that he had a key and the ability to enter Ms. Glover's house during her declining days. The jury found that Hutchins did not act in good

faith in offering the "Hays Will," in which the bequest was made to his son. The jury also found that Hutchins had unlawfully appropriated monies of Ms. Glover during his tenure as her attorney in fact.

Mrs. Ruth Hooper, a witness to the "McCoy Number One Will" testified that she had known Ms. Glover some thirty-five or forty years and that "[s]he told me, always, that she wanted her property to go" to appellee. Elizabeth McCampbell testified that she was a volunteer driver for "Meals on Wheels." In that capacity she became acquainted with Ms. Glover in June 1981. Ms. Glover was lonely and because of that, she said, she would go by the house "maybe once a week, and stay sometimes three hours just listening to her talk." During the course of those conversations, Ms. Glover told her "any number of times" that her intentions were for her property to go to appellee.

We agree with appellee that the facts and the decision in *In re Estate of Caples*, 683 S.W.2d 741 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.) are analogous to, and helpful in, the disposition of the question before us. In *Caples*, a lost will had remained in that testatrix's possession in the home where she lived with her husband, the contestant. The appeal resulted from a trial court instructed verdict. In reversing that decision, the Court held that the facts of the husband's ready access to that testatrix's important papers and that the husband's intestate share was far more valuable than his bequest under the will, were sufficient to raise a fact question for disposition by the jury. *Id.* at 743. Likewise, the facts show here an individual with ready access to the Glover residence and who would have a substantial beneficial gain if the "Brown Will" were not in existence. Moreover, in this case, there was existent evidence that the individual had unlawfully appropriated funds of Ms. Glover during the summer of 1985 prior to her death. Moreover, in this case, the evidence is undisputed that Ms. Glover had repeatedly expressed the desire that her property go to appellee.

While appellants cite *Pipkin v. Dezendorf*, 618 S.W.2d at 924, in support of their position, that case is distinguishable. In *Pipkin*, the Court commented that "appellant was unaware of the presumption of revocation in appellee's favor and that he had the burden to overcome it." *Id.* at 925. In that case there was no attempt to introduce evidence such as existed in this case and which we hold was sufficient to raise a fact question as to revocation for disposition by the jury.

We, therefore, hold that there is some evidence to support the jury's finding of non-revocation and we cannot say that the evidence is factually insufficient to support the jury's verdict.

In summary, we overrule all of appellants' points of error. There being no reversible error, we affirm the judgment of the trial court.