In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00014-CR


______________________________




CARL O'NEAL COFFELT, JR., Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 336th Judicial District Court


Fannin County, Texas


Trial Court No. 21639




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Carl O'Neal Coffelt, Jr., appeals from his conviction by a jury for possession of
methamphetamine with intent to deliver. The jury assessed his punishment at twenty years'
imprisonment and a $10,000.00 fine. (1) On appeal, he contests the sufficiency of the evidence. 

 Coffelt was stopped by Officer Josh Walker for driving in a car with expired tags. William
Harrington was a passenger. Walker called for assistance, and both he and Officer Mike Stevens
questioned Coffelt and Harrington. The officers asked for permission to search the automobile,
which Coffelt granted. In the car, Walker found a pink Clinique makeup bag containing nine
syringes, a black digital scale, and a cigarette package with eight baggies containing what was later
determined to be methamphetamine. 

 At the scene, both Coffelt and Harrington denied ownership of the bag, and Officer Walker
testified Harrington stated that he and Coffelt were going to Denison to purchase a half-ounce of
methamphetamine. 

 In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000).

 In a factual sufficiency review, we also view all the evidence, but do so in a neutral light and
determine whether the evidence supporting the verdict is so weak or so outweighed by the great
weight and preponderance of the evidence that the jury's verdict is clearly wrong or manifestly
unjust. Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); Marshall v. State, 210
S.W.3d 618, 625 (Tex. Crim. App. 2006); Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim.
App. 2006); Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). In this review, we are
to afford "due deference" to the jury's determinations. Marshall, 210 S.W.3d at 625.

 When an accused is not in exclusive possession of the place where contraband is found, it
cannot be concluded he or she had knowledge or control over the contraband unless there are
additional independent facts and circumstances that link the accused to the contraband. Poindexter
v. State, 153 S.W.3d 402 (Tex. Crim. App. 2005). These "links" may be either direct or
circumstantial and must establish, to the requisite level of confidence, that the accused's connection
with the drug was more than just fortuitous.

 The number of links present is not as important as the degree to which they tend to link the
defendant to the controlled substance. Washington v. State, 215 S.W.3d 551, 555 (Tex.
App.--Texarkana 2007, no pet.); Taylor v. State, 106 S.W.3d 827, 831 (Tex. App.--Dallas 2003,
no pet.). There is no set formula that will dictate a conclusion that links exist sufficient to support
an inference that a defendant knowingly possesses contraband. Id.; Porter v. State, 873 S.W.2d 729,
732 (Tex. App.--Dallas 1994, pet. ref'd). 

 However, a number of recognized factors include whether: (1) the contraband was in plain
view or recovered from an enclosed place; (2) the accused was the owner of the premises or the place
where the contraband was found; (3) the accused was found with a large amount of cash; (4) the
contraband was conveniently accessible to the accused; (5) the contraband was found in close
proximity to the accused; (6) a strong residual odor of the contraband was present; (7) the accused
possessed other contraband when arrested; (8) paraphernalia to use the contraband was in view, or
found on the accused; (9) the physical condition of the accused indicated recent consumption of the
contraband in question; (10) conduct by the accused indicated a consciousness of guilt; (11) the
accused attempted to flee; (12) the accused made furtive gestures; (13) the accused had a special
connection to the contraband; (14) the occupants of the premises gave conflicting statements about
relevant matters; (15) the accused made incriminating statements connecting himself or herself to
the contraband; (16) the quantity of the contraband; and (17) the accused was observed in a
suspicious area under suspicious circumstances. See Lassaint v. State, 79 S.W.3d 736, 740-41 (Tex.
App.--Corpus Christi 2002, no pet.); Kyte v. State, 944 S.W.2d 29, 31-32 (Tex. App.--Texarkana
1997, no pet.). 

 It is the logical force the factors have in establishing the elements of the offense, not the
number of them, that is important. In other words, we ask if there is evidence of circumstances, in
addition to mere presence, that adequately justifies the conclusion that the defendant knowingly
possessed the substance. Evans v. State, 202 S.W.3d 158, 162 n.9 (Tex. Crim. App. 2006); see
generally King v. State, 895 S.W.2d 701 (Tex. Crim. App. 1995).

 Coffelt argues that the evidence does not show he exercised care, custody, or control over
the items and that the evidence showed strongly to the contrary: i.e., Harrington pled guilty to the
crime himself, thus it would not be logical to likewise find Coffelt guilty of the same offense. 

 As is usual in a case of this nature, there is no direct evidence of possession by either of the
occupants of the automobile--except for Harrington's current protestation that the bag and its
contents belonged to him. At trial, Harrington told the jury that he had purchased the
methamphetamine in Denison the day before and that everything in the Clinique bag belonged to
him. The officer found the bag inside the truck, behind the driver's seat, on the floorboard. At the
scene, Coffelt claimed that the bag was Harrington's. Harrington told the officers that it did not
belong to him and that they had been headed to Denison, where Coffelt was planning to purchase
a half-ounce of methamphetamine at a residence there. After being arrested, and while at the station,
each of the parties attempted to convince officers to allow him to avoid prosecution by working as
an informant. Officers declined both offers. 

 Reviewing the evidence by comparison with the suggested factors, we find it apparent that
the contraband was recovered from an enclosed place in close proximity to the accused (relevant to
factors 1 and 5). It appears that the vehicle belonged to Coffelt, and he was operating it at the time
(relevant to factor 2). Coffelt raised the officer's suspicions because he stated he was headed for a
restaurant (which was actually the other direction), and again because Harrington's version of their
destination (as well as the ownership of the bag) was decidedly different from Coffelt's (relevant to
factor 14). Harrington testifed Coffelt threw a set of scales out of the vehicle window before they
were stopped (relevant to factors 7, 8, and 10). After the two were released on bond, Harrington
testified they went back to the scene and found the scales Coffelt threw out the window, as well as
a pipe Harrington had thrown away. Walker testified he observed objects bouncing off the pavement
that had been thrown from the vehicle Coffelt was driving. Harrington acknowledged that Coffelt
knew the drugs were in the bag, but emphasized that the drugs were his and that Coffelt would have
had to pay him to get any of them. Walker also testified that, during the stop, Coffelt was very
excited, talking very fast and in a high, excited voice--as compared to the way Coffelt had spoken
on other occasions when they had conversed. Officer Walker also testified that he first saw the truck
at the Ranch Motel, which he described as being located in a "high drug area" (relevant to factor 17).

 Other factors do not apply to this case. There is no evidence of a large amount of cash in
either party's possession, that any odor was involved, that Coffelt had recently used any of the
contraband, that he attempted to flee, or that the quantity was enormous. 

 We also note that several of those factors apply not to ownership, but to knowledge that the
item was contraband. There is evidence that Coffelt knew that the bag was in his vehicle and that
it contained methamphetamine, thus that aspect of the proof has been directly met. (2) The remaining
matter is whether the evidence provides sufficient linkages for the jury to conclude that Coffelt
possessed the bag. 

 Coffelt points out he consented to the search of his vehicle, suggesting this indicates his
innocence. However, there may be any number of other reasons for a person to consent to
search--many of which obviously have nothing whatsoever to do with innocence. Many opinions
may be found where consent to search was authorized even when the defendant knew drugs were
in the vehicle. Coffelt relies heavily on Harrington's testimony that he owned the bag and the drugs. 
However, there are also other (and less altruistic) reasons why Harrington might take
responsibility--including fear of retribution in jail, or an agreement with Coffelt. There was also
testimony that both Harrington and Coffelt were drug users and drug dealers. 

 The testimony created issues of fact to be resolved at trial. It is elementary that conflicts in
the evidence are to be resolved by the jury. In doing so, it may accept one version of facts and reject
another or reject any of a witness' testimony. Penagraph v. State, 623 S.W.2d 341 (Tex. Crim. App.
[Panel Op.] 1981). In so doing, it is the jury's job to judge the credibility of the witnesses and the
weight to be given their testimony, and it may resolve or reconcile conflicts in the testimony,
accepting or rejecting such portions thereof as it sees fit. Banks v. State, 510 S.W.2d 592 (Tex.
Crim. App. 1974).

 In this case, the jury had two different theories of the case before it, and evidence which
could support either. In such a situation, we may not second-guess the jury's determination. We find
the evidence both legally and factually sufficient to support the verdict.

 We affirm the judgment.

 

 Jack Carter

 Justice


Date Submitted: June 21, 2007

Date Decided: July 25, 2007


Do Not Publish

 
1. Two separate incidents were tried together in this proceeding. The other charge was based
on another traffic stop made three months after the date of this offense--also for possession of
methamphetamine with intent to deliver. Coffelt pled guilty to that charge and was sentenced for
commission of a state jail felony. That conviction is not a subject of this appeal. 
2. The jury was not charged on any theory of criminal responsibility.



t box was found and searched, the will was not found there,
either. The evidence is sufficient to show that the document produced was the will written and
signed by Capps and that, despite a diligent search, the original was not found. The will's contents
were adequately proven, and the court's findings of fact and conclusions of law on that matter are
supported by the evidence.
            B. There Was Sufficient Evidence To Show Nonrevocation and To Rebut the Presumption
of Revocation of a Lost Will
            A central question to this case is whether the failure to locate the original, which was last
seen in the possession of Capps, requires the conclusion she revoked the will by destroying it. The
proponent of the will is required to meet his or her burden of proving the will has not been revoked. 
See Tex. Prob. Code Ann. § 88(b)(3) (Vernon 2003) (to obtain probate of will, proponent must
satisfy court that will was not revoked).
            Bishop and Parvar argue that, because there was no proof that Capps did not revoke the will
by destruction, the presumption should stand. True, an original will's absence creates a rebuttable
presumption of revocation; but that presumption can be overcome by proof and circumstances
contrary to the presumption or that it was fraudulently destroyed by some other person. Bailey v.
Bailey, 171 S.W.2d 162, 165 (Tex. Civ. App.—Amarillo 1943, no writ).



            Under the standard sufficiency analysis rule, which applies now in Texas, we look to see
whether the evidence was sufficient to "prove to the satisfaction of the court" that the will was not
revoked. See Tex. Prob. Code Ann. § 88(b) (Vernon 2003). The testimony of a witness that, to
her knowledge or belief, the testator did not revoke the will has been held sufficient evidence of
nonrevocation to support probate of the will. See Cason v. Taylor, 51 S.W.3d 397, 407 (Tex.
App.—Waco 2001, no pet.); Bryant v. Hamlin, 373 S.W.2d 837, 840 (Tex. Civ. App.—Dallas 1963,
writ ref'd n.r.e.). Evidence that a decedent, after execution, recognized the will's continued validity
and had continued affection for the chief beneficiary thereunder, without evidence tending to show
the decedent's dissatisfaction with the will or any desire to cancel or change the will, has been held
sufficient to rebut the presumption of revocation of a missing original will. See Sparkman v.
Massey's Estate, 297 S.W.2d 308 (Tex. Civ. App.—Dallas 1956, writ ref'd n.r.e.).
            The record in this case contains no evidence of revocation or destruction of the will. In that
respect, the evidence shows nothing more than the fact that, despite a search, the original document
was not found. Thus, the presumption of revocation exists and must be overcome by a
preponderance of the evidence. Glover, 744 S.W.2d at 940.
            In this case, while there is no direct evidence Capps did not revoke the will, there was
sufficient evidence to rebut the presumption of its revocation. Witnesses testified Capps directed
that copies of the will, as executed, be placed with major devisees referenced in the will, the church
and Sue Roberts; that Capps, at a church business meeting, had publically announced her intentions
of leaving her property essentially as set out in the will; that she had also told others, including Jo
Nell Ford and Sue Roberts, of her intent to leave her property essentially as set out in the will; that
she set up certificates of deposit at the bank consistent with her statements in the will, and those
dispositions were carried out, apparently unchanged, after her death; that she continued to have
affection for the devisees named in the will with no "falling out"; that she subsequently did not
express or intimate any contrary intention regarding her testamentary intent or regarding the
disposition of her property; and that she was the type of person who would have informed others had
she decided to revoke or change her will.
            Bishop and Parvar contend this evidence is not sufficient to support the court's decision. In
their argument, they rely in part on language in Bailey stating that evidence of continued affection
of a testator was not of any "material significance" to prove that he did not destroy his will, which
had disappeared. See Berry v. Griffin, 531 S.W.2d 394, 397 (Tex. Civ. App—Houston [14th Dist.]
1975, writ ref'd n.r.e.) (evidence of continued affection, standing alone, insufficient and of no
material significance, citing Bailey as authority, but also applying the clear and convincing evidence
standard). The evidence of Capps' continued affection for the Robertses and her church most
certainly did not stand alone, and the standard of proof is now preponderance of the evidence, not
clear and convincing evidence. See Glover, 744 S.W.2d at 940.
            Under these facts, there is sufficient material evidence to support the trial court's findings of
the reason for nonproduction and that the will had not been revoked. We overrule points of error
one through six.
2.  The Evidence Was Sufficient To Show the Will Was Wholly in Capps' Handwriting
            The document at bar is handwritten and is dated July 10, 1996. It purports to devise



property, not of one, but of two people, Ola Maye Capps and Nadine Capps.


 The handwriting is
consistent with the signature of Nadine Capps, and the document was signed by both Nadine and Ola
Maye and contains an acknowledgment of a notary public.
            Bishop and Parvar attack the probate of the will by asserting, in points of error seven and
eight, that it was not properly executed as a witnessed will, and in points nine and ten, that the
evidence was not sufficient that the will was wholly in Capps' hand. We address the will, not as a
witnessed will,


 but as a holograph since the trial court found it to be a holograph and we deem that
issue dispositive here.
            To show a valid holographic will, the proponent has the burden of proving that the instrument
is wholly in the testator's handwriting. Trim v. Daniels, 862 S.W.2d 8, 10 (Tex. App.—Houston [1st
Dist.] 1992, writ denied). "If not self proved . . . a will wholly in the handwriting of the testator may
be proved by two witnesses to his handwriting, which evidence may be by sworn testimony or
affidavit taken in open court." Lopez v. Hansen, 947 S.W.2d 587, 589 (Tex. App.—Houston [1st
Dist.] 1997, no writ).
            A testamentary instrument, intended by the testator as holographic, will be enforced as such,
although it contains words not in the handwriting of the testator, if such other words are not
necessary to complete the instrument and do not affect its meaning. Maul v. Williams, 69 S.W.2d
1107, 1109–110 (Tex. Comm'n App. 1934, holding approved); Watkins v. Boykin, 536 S.W.2d 400
(Tex. Civ. App.—El Paso 1976, writ ref'd n.r.e.); Kramer v. Crout, 279 S.W.2d 932 (Tex. Civ.
App.—Waco 1955, writ ref'd n.r.e.). See generally In re Estate of Jansa, 670 S.W.2d 767, 768 (Tex.
App.—Amarillo 1984, no writ). For our purposes, the document's material which is in other than
Capps' handwriting consists of Ola Maye's signature, the acknowledgment, and the notary public's
signature; those are surplusage to a valid holograph.
            In this case, a number of witnesses examined the photocopy of the will in evidence, testified
as to their familiarity with Capps' handwriting, and identified the handwriting of the will as hers. 
Their testimony, in sum, was that all the dispositive portions of the document were written in Capps'
hand, and it was signed by her. This is sufficient to support probate as a holographic will, and there
is no evidence to the contrary. We overrule points of error seven through ten.
3. The Selection of Personal Representative Is Correct
            In the eleventh and final point of error, Bishop and Parvar allege the court erred by
appointing Devon Roberts as the administrator pursuant to the will. Because we have concluded 
the will was properly probated, this point also fails, because it is based on the assertion that the will
was improperly probated.
            We affirm the judgment.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          November 16, 2004
Date Decided:             December 15, 2004